**E-Filed 9/13/2010**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICIA GALVIN,<br><br>                Plaintiff,<br><br>    v.<br><br>PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, as Administrator and Fiduciary of the Group Long Term Disability Plan for Heller, Ehrman, White & McAuliffe; and THE GROUP LONG TERM DISABILITY PLAN FOR HELLER, EHRMAN, WHITE & MCAULIFFE,<br><br>                Defendants. | Case Number 5:07-5195-JF/PVT<br><br>**ORDER[1] RE COMPUTATION OF BENEFITS AND INTEREST DUE**<br><br>Re. docket no. 49 |

      On July 17, 2009, the Court entered judgment in favor of Plaintiff Patricia Galvin ("Galvin") and indicated that "[i]f the parties [we]re unable to agree as to the method of calculating the benefits owed to Galvin, including any interest or applicable offsets, the Court w[ould] hold a further hearing for that purpose." Dkt. 44 at 23. The parties have been unable to reach such an agreement, and Galvin now moves for a computation of benefits consistent with

---

    [1] This disposition is not designated for publication in the official reports.

her calculations and an award of prejudgment interest at a specified rate. Defendants Provident Life and Accident Insurance Company and the Group Long Term Disability Plan for Heller, Ehrman, White & McAuliffe (collectively, "Defendants") oppose the motion.

## I. CALCULATION OF BENEFITS

Galvin contends that she is entitled to a total of $806,865.20, exclusive of prejudgment interest, through July 2010. Defendants contend that Galvin's "imprecise calculations and failure to account for [certain] offsets" result in her calculation of benefits being "off by at least $32,654.18." Opposition at 1-2. Both parties calculate the benefits due to Galvin in five distinct time periods based upon different applicable offsets. The Court will do the same.

### A. January 8, 2003 through January 4, 2004

Galvin became disabled on January 8, 2003. The applicable ninety-day elimination period was satisfied on April 7, 2003. Galvin was earning an annual salary of $203,000 at the time of her disability. The parties nearly agree on Galvin's monthly benefit, with a difference between them of twenty-two cents. Galvin rounded her numbers to the nearest dollar for ease of calculation, and Defendants did not. However, Galvin has agreed to recalculate her figures using the twenty-two cent monthly deduction. Accordingly, the parties agree that the monthly benefit is $11,277.78, or two-thirds of Galvin's monthly salary.

The parties also agree that Galvin's benefits during this period under the Plan should be offset by her California State Disability Insurance ("SDI") benefit. Galvin received a weekly SDI benefit of $602. The parties dispute the proper method of converting the SDI benefit from a weekly sum to a monthly amount. Defendants contend that the $602 should be multiplied by fifty-two then divided by twelve. This calculation results in a total of $2,608.67 per month. Galvin asserts that the monthly rate for SDI should be four times her weekly benefit, or $2,408. While Galvin contends that her declaration is the only evidence in the record bearing on the monthly amount of SDI benefits, *see* Galvin Decl., ¶ 2 ("[d]uring the period from January 8, 2003, through January 4, 2004, I received State Disability benefits of $602.00 per week, or $2,408.00 per month"), the Court may take judicial notice of the fact that there are fifty-two weeks in a year. Fed. R. Evid. 201(b) (providing that a court may take judicial notice of a fact

that is not "subject to reasonable dispute [because it is] (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.") The Court will adopt Defendants' proposed figure of $2,608.67 per month. Accordingly, the monthly amount owed to Galvin by the Plan is $8,669.11 ($11,277.78 - $2,608.67).

Galvin multiplies the monthly benefit (minus the SDI deduction) by nine based upon the period of time involved (April 7, 2003 through January 4, 2004). Defendants argue that Galvin's calculation is incorrect because she did not begin receiving benefits until "mid-month." Although the time period is nearly nine months, as contended by Galvin, the Court will prorate Galvin's benefits as for April and January. Galvin is entitled to twenty-three days in April and three days in January. Opposition at 8 (asserting without opposition that Galvin is not entitled to benefits for the day she returned to work, January 4, 2004), which amounts to a total of $7,513.23. The total amount due thus is ($8,669.11 x 8) + $7,513.23, or $76,866.11.[2]

**B. May 2, 2004 through August 1, 2004**

The parties agree that during this period Galvin received payment from Heller Ehrman that, when combined with her SDI benefits, equaled her full salary. Galvin Decl. ¶ 3. Galvin thus seeks only the minimum monthly benefit of $100 under the policy. Defendants contest Galvin's requested amount because the period begins on May 2, 2004 rather than May 1, 2004. Accordingly, they contend that because of this one day discrepancy Galvin's request exceeds her entitlement by $3.33. However, as Galvin asserts, the plan provides a minimum monthly payment of $100 and provides no daily deduction. AR 2426. The Court thus concludes that Galvin is entitled to $300 for the period between May 2, 2004 and August 1, 2004.

---

[2] Defendants also argue that they are entitled to an offset for "salary continuation" for April 8 and April 9, 2003. Opposition at 3, citing Gregory Declaration, ¶ 3, Ex. A (Heller Ehrman's Mandatory Settlement Conference Statement in Galvin's discrimination action). However, as Galvin points out, the document upon which Defendants rely, the Heller Ehrman Mandatory Settlement Conference Statement ("the Statement"), indicates that the salary continuation was "integrated with State Disability Insurance." Accordingly, the amount has been offset already for SDI and need not be offset again.

3

1    Defendants also contend that Galvin received additional money in a settlement with her
2 workers' compensation carrier (The Hartford) that extended the stated benefit beyond this
3 period. Defendants argue that they are entitled to an offset for all workers' compensation
4 benefits Galvin received and request that the Court order Galvin to disclose the settlement
5 agreement in her suit against the Hartford to determine the extent of the offset.

6    Galvin declares that she "never filed a worker's compensation lawsuit relating to [her]
7 employment with Heller, Ehrman, White & McAuliffe." Supplemental Declaration of Patricia
8 Galvin ("Galvin Supp. Decl.") ¶ 1. She explains that she "believes that Heller Ehrman filed a
9 worker's compensation claim on [her] behalf . . . without [her] knowledge." *Id.* ¶ 2. Galvin
10 acknowledges that she "did receive a benefit check from Hartford Insurance in the amount of
11 $9,152.00. However, [she] wrote 'void' on the check and called Hartford and told them to
12 cancel the payment. In a subsequent conversation with Hartford they told [her] that they had
13 done so. The reason [she] had Hartford void the payment was that [she] didn't think [she] was
14 entitled to the money, as [she] was receiving monies from Heller Ehrman that, when added to
15 [her] State Disability payments, equaled [her] full salary." *Id.* ¶ 2; *see also id.*, Ex. 1 (photocopy
16 of voided check from The Hartford in an amount of $9,152.00 with an issue date of July 7, 2005
17 and loss date of May 4, 2004.) In light of the evidence on the record, the Court is satisfied that
18 Galvin did not sue The Hartford in a worker's compensation action and did not receive any
19 related benefits. Accordingly, Defendants' request that Galvin be ordered to disclose a non-
20 existent settlement agreement is moot.

21    **C. August 2, 2004 through February 1, 2005**

22    Galvin accidentally calculated this time period by multiplying her monthly benefit (less
23 the offset of SDI benefits) by seven rather than six months. Defendants pointed out this error in
24 their opposition papers, and Galvin concedes in her reply that the correct multiplier is six
25 months. The parties make the same arguments concerning the proper method of calculating the
26 monthly SDI offset that are addressed above. *See supra,* I.A. The Court again will adopt
27 Defendants' method of calculation. During this time period, Galvin received weekly SDI
28 benefits of $728, or $3,154.67 per month. Defendants also argue that Galvin is not entitled to

4

benefits for August 1, 2004.  However, Galvin does not include August 1, 2004 in her calculation for this period, instead including February 1, 2005.  Accordingly, the total amount owed is $11,277.78 - $3,154.67 (monthly benefit, minus SDI benefit) x 6 (number of months) = $48,738.66.

**D. February 2, 2005 through May 31, 2007**

Galvin claims that during this twenty-eight month period she had not yet been awarded Social Security Disability benefits ("SSDI") and that her state disability had run out.  With respect to this issue, she argues that she is entitled to past due long-term benefits with no offset – $11,277.78 (monthly benefit) x 28 (number of months) = $315,777.84.

Defendants argue that "[g]enerally, state disability payments are paid for 52 weeks per claim."  Opposition at 6, citing Cal. Unemp. Ins. Code § 2653 (providing that "the maximum amount of benefits payable to an individual during any one disability benefit period shall be 52 times his or her weekly benefit amount . . . ."  Defendants therefore assert that Galvin "*should have* continued [to receive SDI benefits] through August 1, 2005."  Opposition at 6 (emphasis added).  However, while Defendants request this offset, they present *no evidence* that Galvin in fact continued to receive SDI benefits after February 1, 2005.  *See contra* Galvin Decl. ¶ 4 ("through February 1, 2005, I received State Disability benefits of $728.00 per week, or $2912.00 per month.")  Defendants argue, and Galvin concedes, that there is no evidence in the form of documentation or correspondence from the California Employment Development Department ("EDD") that reflects discontinuation of Galvin's benefits.  However, the Court concludes that Galvin does not bear the burden of demonstrating the absence of an offset.  Accordingly, based upon the evidence in the record, Galvin is entitled to $315,777.84 for the period from February 2, 2005 to May 31, 2007.[3]

---

[3] At the hearing on August 13, 2010, counsel for both parties recognized the difficulty of obtaining records from the EDD for the time period beginning on February 2, 2005 and ending on August 1, 2005.  The Court suggested that it could retain jurisdiction with respect to the computation of a possible offset of benefits for that period.  The parties consented to the Court's proposal.  Accordingly, should Defendants obtain evidence from the EDD demonstrating that in fact Galvin did receive SDI benefits between February 2, 2005 and August 1, 2005, the Court

**E. June 1, 2007 through July 31, 2010**

In December 2008, Galvin was found eligible for SSDI benefits retroactive to June 1, 2007. Galvin's Motion, Ex. 2 (Social Security Administration award letter to Galvin dated December 9, 2008). Accordingly, on or about December 15, 2008, Galvin received retroactive SSDI benefits in a lump sum totaling $36,624. *Id.* The lump sum amount reflects monthly payments at a rate of $2,004.60 for the six-month period of June 1, 2007 through November 30, 2007.[4] Galvin is entitled to the $11,277.78 (monthly benefit), minus $2,004.60 (monthly SSDI offset), multiplied by thirty-eight (months in the period) = $352,380.84.

**F. August 1, 2010 through present**

Galvin does not address this time period in her moving papers because the instant motion originally was set for hearing on June 11, 2010.[5] The Court will adopt the same method utilized above to determine the daily benefit amount for this time period. Accordingly, Galvin is entitled to $9,273.18 for the month of August 2010 ($11,277.78 (monthly benefit), minus $2,004.60 (monthly SSDI offset)). She also is entitled to $4,017.91 for the first thirteen days of September 2010 ($11,277.78 (monthly benefit), minus $2,004.60 (monthly SSDI offset), divided by thirty days ($309.07), multiplied by thirteen (number of days in September)).[6]

**G. Heller Ehrman Settlement Agreement**

Defendants contend that they are entitled to an additional offset for settlement benefits

---

will permit Defendants to submit such evidence and obtain the offset.

[4] Two costs of living increases were awarded. These increases do not affect the computation of benefits because they are excluded under the policy as exceptions to benefit offsets. AR 2435, item 1.

[5] On June 8, 2010, the Court approved a stipulation and order to continue the hearing on the motion from June 11, 2010 to July 2, 2010. Dkt. No. 54. On June 29, 2010, the Court granted Defendants' motion to continue the hearing until August 13, 2010 because of the excusable neglect of Defendants' counsel.

[6] Because the parties did not brief the issue of Galvin's entitlement for the period, the Court will retain jurisdiction to consider any offsets that may be applicable.

6
Case Number 5:07-5195 JF/PVT
ORDER RE COMPUTATION OF BENEFITS AND INTEREST DUE
(JFLC3)

that Galvin received from her lawsuit against Heller Ehrman.[7] Pursuant to a settlement agreement entered into in October 2006, Galvin received a sum known to the parties for wage loss. Defendants argue that this amount should be considered income offsetting any amount to be paid as "income replacement" pursuant to Galvin's disability insurance policy. *See* AR 2422. Defendants argue that damages for wage loss are equivalent to "salary continuation" payments which are listed specifically as an offset in the disability policy. AR 2434. In addition, the policy provides an offset for any amount received by compromise or settlement of salary continuation or severance pay. *Id.*

Galvin argues that Defendants, as affiliates of Heller Ehrman for the purposes of the settlement agreement, waived the right to claim any offset based on the settlement agreement under the release of claims provision in the agreement itself. She notes that the settlement agreement provides for a release of all claims not specifically excluded, and that the offset was not listed among the exclusions. However, the agreement also provides that Galvin's right to bring a disability claim is limited to recovery of benefits under the Heller Ehrman Disability Plan. Defendants thus implicitly retained the right to assert all offsets contained in the Plan, including any offset for relevant settlement payments.

The Plan allows an offset for any amount received by compromise or settlement of a claim for salary continuation or severance pay applicable to the time in which disability benefits were available. AR 2434. Galvin contends that Defendants have failed to show that the amount she received for wage loss relates to the period of her disability. She notes that the payment conceivably could have been intended to compensate for a time prior to the date of her disability claim or when she briefly returned to work. However, because the agreement expressly settled a dispute regarding Galvin's disability claims, and the relevant portion of the payment was

---

[7] To support their argument for an additional offset, Defendants requested the Court order production of the confidential settlement agreement between Galvin and Heller Ehrman. After reviewing the agreement *in camera*, the Court concluded that paragraph seven on page three of the agreement contained information relevant to the instant motion for computation of benefits. In light of the confidential nature of the agreement, the Court issued an order on August 18, 2010, adopting proposed safeguards and instructing Galvin to produce the settlement agreement to Defendants and asked both parties to brief the issue.

designated as wages in the settlement agreement, the Court concludes that Defendants are entitled to an offset for the amount.

### H. Total amount owed without prejudgment interest

Pursuant to the foregoing discussion, the Court finds that Galvin is entitled to the following amounts, minus the offset for wages paid as part of her settlement with Heller Ehrman, *see supra* I.G.**,** and exclusive of prejudgment interest:

    1. January 8, 2003, through January 4, 2004 = $76,866.11

    2. May 2, 2004, through August 1, 2004 = $300.00

    3. August 2, 2004, through February 1, 2005 = $48,738.66

    4. February 2, 2005, through May 31, 2007 = $315,777.84

    5. June 1, 2007 through July 31, 2010 = $352,380.84

    6. August 1, 2010 through present = $13,291.09

    TOTAL: $807,354.54

## II. PREJUDGMENT INTEREST

### A. Whether prejudgment interest should be awarded

"Whether to award prejudgment interest to an ERISA plaintiff is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Landwehr v. DuPree*, 72 F.3d 726, 739 (9th Cir. 1995) (internal citation and quotations omitted). "Among the factors to be considered in determining whether prejudgment interest should be awarded is the presence or absence of bad faith or ill will." *Id.* (internal citation and quotations omitted).

Defendants contend that prejudgment interest should not be awarded because the Court did not make an express finding of bad faith and recognized that Defendants had "some basis" for their concerns with respect to Galvin's claims. Dkt. No. 44 at 2. However, as Galvin points out, the Court did observe that Defendants "consistently [] rejected Galvin's claim as unsubstantiated by objective medial data" despite the fact that "Galvin 'ha[d] been examined and treated by numerous physicians, many of whom ha[d] documented her pain, and none of whom ha[d] questioned its existence or believed it to be less severe than Galvin herself ha[d] described

8

it." *Id.* Moreover, the Court noted the Ninth Circuit's observation that "individual reactions to pain are subjective and not easily determined by reference to objective measurements." *Saffron v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863, 872 (9th Cir. 2008); *id*. at 873 (suggesting that an insurer, by demanding objectively verifiable evidence of pain, might be requiring "evidence that simply is not available.") Finally, Galvin has been denied the ability to invest and earn interest on the benefits owed to her for approximately seven years. Accordingly, the Court concludes that the equities favor an award of prejudgment interest.

### B. Prejudgment interest rate

"Generally, 'the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate.'" *Blankenship v. Liberty Life Assur. Co.,* 486 F.3d 620, 628 (9th Cir. 2007), quoting *Grosz-Salomon v. Paul Revere Life Ins. Co.,* 237 F.3d 1154, 1164 (9th Cir. 2001) (citation omitted). "'Substantial evidence' is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.,* quoting *Blanton v. Anzalone*, 813 F.2d 1575, 1576 (9th Cir. 1987) (holding that the district court abused its discretion by awarding, on an ERISA award, a prejudgment interest rate below the Treasury bill rate without making a finding as to the equities which justified the departure) (citations omitted). "The court may compensate a plaintiff for 'the losses he incurred as a result of [the defendant's] nonpayment of benefits.'" *Id.,* quoting *Dishman v. UNUM Life Ins. Co. of Am.,* 269 F.3d 974, 988 (9th Cir. 2001).

Galvin argues that the interest rate prescribed by 28 U.S.C. § 1961 would not "compensate [her] for 'the losses [s]he incurred as a result of [Defendants'] nonpayment of benefits.'" *Dishman,* 269 F.3d at 988 (recognizing the Court's authority to "choose an interest rate that compensates" the plaintiff, but holding that the district court abused its discretion in awarding a sixteen percent prejudgment interest rate on an ERISA award-double the rate of return on the defendant's investment portfolio-because '[p]rejudgment interest is an element of compensation not a penalty.'"); *Blankenship*, 486 F.3d at 628 (affirming the trial court's award

9

of prejudgment interest at a rate of 10.01%, compounded monthly, based upon plaintiff's demonstration that but for the insurer's failure to pay benefits, he would have had his own funds invested at that rate.)  Galvin contends that but for Defendants' failure to pay, she would have invested her money in various instruments that earned interest at a weighted average rate of 4.374 percent between April 2003 and the present.  Declaration of Patricia Galvin ("Galvin Decl.") ¶¶ 5-13; *see also* Galvin's Motion, Ex. 3 (interest rate computation performed by J. Michael Barrick, MBA, EA, CFS); Ex. 4 (Various statements from the above-referenced investment institutions).

Defendants contend that the Court should adopt the interest rate prescribed by 28 U.S.C. § 1961.  § 1961 provides that the "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  These amounts for the relevant period are as follows: 1.24% in 2003; 1.89% in 2004; 3.62% in 2005; 4.94% in 2006; 4.53% in 2007; 1.83% in 2008; and 0.47% in 2009.  Declaration of Catherine Gregory ("Gregory Decl.") ¶ 7.  The average yield for the first seven months of 2010 is 0.36%.  *Id.*

While the Court concludes that the equities favor an award of prejudgment interest, because there was "some basis" for Defendants' concerns with respect to Galvin's claims and there has been no finding of bad faith, the Court will calculate the prejudgment interest at the rate prescribed by 28 U.S.C. § 1961.  *Blankenship*, 486 F.3d at 628, quoting *Grosz-Salomon*, 237 F.3d at 1164 (holding that "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate.").

## IV. ORDER

Good cause therefor appearing, the Court concludes that Galvin is entitled to $807,354.54 in benefits owed, minus the offset for wages paid as part of her settlement with Heller Ehrman, *see supra* I.G., plus pre-judgment interest at the rate provided under 28 U.S.C. § 1961.  Galvin's request that Defendants reinstate her benefits immediately is GRANTED.  The

10

parties shall meet and confer to provide an accurate calculation of the total amount of pre-judgment interest.

**IT IS SO ORDERED.**

DATED: 9/13/2010

_____
JEREMY FOGEL
United States District Judge